**LAWTON OIL & REFINING CO. et al. v. NICHOLS et al.**

No. 23091. Opinion Filed Nov. 29, 1932.

Pierce, Follens & Rucker and Fred M. Mock, for petitioners.

J. Woody Dixon and J. Berry King, Atty. Gen., for respondents.

ANDREWS, J. This is an original proceeding in this court instituted by the respondent and its insurance carrier before the State Industrial Commission to review an award in favor of the claimant therein. The parties hereinafter will be referred to as petitioners and claimant.

The claimant sustained an accidental personal injury arising out of and in the course of his employment by the petitioner Lawton Oil & Refining Company. He was furnished hospital and medical attention and compensation payments were made to him over a period of five months without any award therefor. On January 25, 1926, the petitioners filed with the State Industrial Commission an application for an order requiring the claimant to submit to a medical examination, and, at the same time, they filed a motion requesting the State Industrial Commission to determine the extent of disability of the claimant. A hearing thereon was had at which the claimant was represented by able counsel. On January 27, 1926, the S ate Industrial Commission made an order directing the claimant to appear before Dr. John Riley and submit to a medical examination to determine his present condition. That examination was made by Dr. Riley, who reported as follows:

"2-9-26

"Mr. G. W. Nichols,
"Lawton, Okla.

"Age 38 years    Received Feb. 9
"Employer—Lawton Oil & Refining Co.

"Insurance Carrier—Aetna Life Insurance Company

"Date of Injury—July 21, 1925

"On February 9, 1926, at St. Anthony's Hospital, Oklahoma City, Oklahoma. I examined Mr. G. W. Nichols. Mr. Nichols gave the following complaint:

"This patient was injured on July 21. 1925

"The X-ray taken in Nov. 1925, shows no evidence of bony lesion of the left knee.

"The patient is a hypo-thyroid type of man, that is overweight at least 50 pounds: whose muscle tone is very much below normal, on account of disuse: and who presents at this time, the following complaint:

"1. Soreness and swelling of the left knee.

"There is no evident swelling on inspection, but, on measurement, I found a slight increase in size of the left knee and calf. This is so little though that it is negligible. There is furthermore complete passive flexion of the left knee on the thigh. Active flexion is well beyond right angles.

"2. Pain on walking.

"It is apparent from the observation of the patient in his maneuvers around the hospital, that this is not a very serious disability, and with the amount of flexion that he has; normal mobility of the knee-pan, and the little evidence of that we find of swelling, muscle atrophy, and an edema; I am of the opinion that the pain complained of in this case is not a serious one.

"3. Stiffness of the left knee and ankle.

"The ankle itself is perfectly functionating in both dorsi-flexion and planter flexion, with normal movements of the foot in all directions.

"The knee joint, as I said before, has full flexion and full extension under passive movement of no distressing degree. There is, furthermore, no lateral or unusual mobility of the knee joint, such as you get with a stretching or rupturing of the crucial ligaments or the lateral ligaments.

"4. Inability to work.

"I suppose that the patient gauges this disability on the above-named symptoms. There is no reason, in my opinion, for this patient, not to return to work; and I presuppose that in the beginning that he will have some distress, perhaps some swelling of the knee, but this will rapidly disappear as persistence in function is continued.

"A review of the history of the accident rather impresses me that this patient never did have a very serious injury, that it was most presumably due to a hemorrhagic effusion into the joint or the ligaments and fatty tabs of the joint; and as the result of this hemorrhage, adhesions formed and we had a condition known as 'chronic synovitis.' This produced pain when the patient stretched the adhesions and, as the result of engorgement or hyperemia, there was thrown out some fluid into the knee joint known as 'effusion.' But, now, in the course of time, under the force of active movements and the changes that nature has made in this joint cavity and integral structure: there has been a rather complete reparation of this injury; and the residual that is present at this time, will also disappear under the normal tone imparted to the body as the result of work. The muscle tone is that gracious and precious inheritance which the animal life possesses, that takes up the slack in tendons and facias, that have to do with

the stabilization of joints; and those individuals who possess poor muscle tone, and are unfortunate enough to have had an accident such as this man had; there will be more or less of a lack of stabilization of all of his joints, and especially of the injured one, until the muscle tone is sufficiently developed to take up and control the structures which make a joint stable in all positions.

"There is no evidence at this time, either clinically or from the X-ray, to lead one to believe that this patient will have a permanent disability of any degree; that his disability has been, as I have stated above, of a type that produced a 'chronic synovitis,' and today there is very little residue of that pathology.

"I suggest, as a therapeutic measure, that he start to work with the idea that he can work, and that he will, as result of this work, rehabilitate himself to secure the lost muscle tone that he has acquired as the result of 8 months of idleness, and that he will have 'no disability' in a short time, say a month or six weeks.

"John W. Riley."

At the conclusion of the hearing on February 11, 1926, at which the claimant, Dr. Riley, and other witnesses testified, the State Industrial Commission found "* * * that the claimant has no disability either temporary total or permanent partial due to the accident sustained on the 21st day of July, 1925," and ordered "* * * that the motion of the respondent and the insurance carrier to discontinue compensation as of January 2, 1926, be sustained and the cause dismissed." An examination of the record discloses that the claimant was not temporarily totally disabled at that time, and there is nothing in this record to show that the claimant has been temporarily totally disabled at any time since that time. No question is now raised as to the correctness of the finding and order as to temporary total disability.

On January 31, 1929, the claimant filed an application to reopen the case in which he alleged that he had never recovered from the injury, and that he "* * * has continually suffered from said injury ever since the same was received and has at all times been disabled from performing work since the date of said injury." He further alleged therein "* * * that an error and wrong was committed against this claimant when his compensation was discontinued and he has at all times been entitled to his compensation ever since the date of said injury and is now and at this time disabled on account of said injury and is unable to work

and labor because of the injury received on the 21st day of July, 1925, as above stated." That application was sworn to by the claimant before a notary public. A hearing was had thereon on May 13, 1929, at which the claimant appeared by another able attorney and at which testimony was heard. The effect of that testimony was to show that the claimant is permanently partially disabled. But that conclusion of the doctor was based on evidence of the condition of the claimant prior to the date of the order dismissing the claimant and denying compensation. There was no evidence of a change of condition after the date of that order. At the close of the hearing the petitioners herein moved to dismiss the case for want of proof of a change of condition. That motion was overruled. The State Industrial Commission then sustained the motion of the claimant for further examination at the expense of the petitioners herein. The attorney for the claimant was directed to notify the claimant of the date the examination was to be made.

No further action was taken until the 22nd day of June, 1931, at which time the claimant filed another motion to reopen the case. That motion was filed by another able counsel, who admits that at that time he did not know of the filing of the first motion to reopen or the hearing thereon. A hearing was had on that motion on October 20, 1931. On November 10, 1931, the State Industrial Commission found:

"That the Commission heretofore, and on the 11th day of February, 1926, issued its order sustaining the motion of respondent and insurance carrier to discontinue compensation as of January 2, 1926; and thereafter, and on the 31st day of January, 1929, claimant filed a motion herein to reopen this cause and award further compensation, and also, a subsequent motion to reopen cause and award further compensation was filed by the claimant herein on June 22, 1931"

—and:

"That as a result of the aforementioned accidental injury claimant has suffered 30 per cent. permanent partial loss of use of the left leg, and 20 per cent. permanent disability to the right leg."

It concluded that:

"The Commission is of the opinion, on consideration of the foregoing facts, that claimant is entitled to compensation at the rate of $16.92 per week, computed from June 22, 1931, for a total period of 125 weeks for the 30 per cent. permanent disability to the left leg, and the 20 per cent. permanent disability of the right leg, as described above, said disability being 25 per cent. of a permanent total disability, or 500 weeks"

—and awarded compensation accordingly, the same to be computed from June 22, 1931.

It is not apparent from the record why compensation was awarded from June 22, 1931. The injury occurred on July 21, 1925. The cause was dismissed by an order dated February 11, 1926. There was no finding of a change of condition after February 11, 1926. The award of November 10, 1931, is not based upon a change of condition after February 11, 1926, and if it was based upon a change of condition after that date, it must be vacated for the reason that there is no evidence in this record showing a change of condition due to the accidental personal injury complained of by the claimant.

Dr. Broshears was offered as a witness by the claimant. He was the doctor who cared for the claimant at the time of his injury. On cross-examination he testified that "He is not any better than he was five or six weeks afterwards," meaning after the date of the accident. He was then asked, "Is he any worse?" and he answered, "From the evidence, I don't think he is." That testimony was given at the hearing in May, 1929. At the same hearing the claimant testified that he had not had any treatment for his knee since that rendered him by Dr. Broshears, only the home remedies which were applied. The claimant testified at that hearing that he had been compelled to use crutches for five months. He was then asked what caused that, and he answered, "It was in my left knee, the same as I was the first two years." With reference to his physical condition after the injury, and prior to the order of February 11, 1926, the claimant at the last hearing testified:

"A. Well, the right leg was bruised from the knee down, and the kneecap was torn loose and blood-shotten, and the left kneecap was busted in two. Q. Did the fluid in the kneecap run out? A. Yes, sir. Q. Did you have any loss of blood? A. Yes; and this big leader in the leg there, up and down, cut the skin in two. They took thirteen stitches. Q. After that, was it necessary for them to drain that? A. Yes; they were opened and drained where it was blood shot."

He testified that when he received the last compensation check "* * * I went on crutches and was carried up to the elevator the last payment they paid." He further testified:

"Q. At the time of the accident and since

that time, you have been a heavy man? A. I have been a heavy man all of my life. Q. What has been your average weight? A. Now? Q. At the time of the accident, and since that time? A. Not as much now as the day I went on the operating table—it was 277 pounds. Q. What is your weight now? A. About 240. Q. It was about 250 in 1926, wasn't it? A. Yes—when I was in Oklahoma City. Q. Now, when this accident occurred, you jumped off the truck, didn't you? A. I was throwed from the truck. Q. You did not leap from it voluntarily? A. When I seen it was going over, I did. Q. That's what I mean. You thought it was—you thought the truck was going over and you jumped off. A. I knew the truck was going to turn over. Q. You say you cut the ligament in your left leg below the knee? A. Yes, sir. Q. That's the only ligament that was cut? A. Yes. Q. You said in answer to Mr. Dixon's question you answered something about breaking—the water coming from the knee. That was the left knee, too? A. Yes. Q. Do you know whether the kneecap was broken or not? A. The X-ray showed it was broken. Q. We don't care for what you saw in the X-ray. You are not supposed to be qualified to answer that. Do you know, from feeling, whether or not the kneecap was broken? A. I think I do. Q. You just think it is? A. Yes, sir. Q. The only injury to the other was a bruise? A. Yes, sir. Q. No broken bones, or anything of that sort? A. I could not say. It 'riz' here. It 'riz' from here to here (indicating)—It was open. Q. Who opened it? A. Dr. Broshears, I suppose. When I was in the hospital. Q. Do you know, as a matter of fact, that that knee was opened? A. Well, I have a scar here to show for it. Q. Is that a surface scar where you got a lick on the leg when you jumped off this truck? A. No; I am sure it was not. My left leg, the surface was torn by the lick. Q. There was no cut on the right leg at all? A. Yes; there was a place. Q. Where? A. From the knee down to the ankle—in the fleshy part. Q. And those were surface cuts? A. Yes; cut to the bone I suppose. Q. Do you know that? A. No; I couldn't say that positively. Q. When did you say you first noticed that there was a place come on your leg that became sore—ulcer? Do you know what an ulcer is? A. I don't know exactly. Q. It was just a sore place and had corruption, possibly infected? A. Yes, sir. Q. When did that start? A. It was after the accident. Q. Has that existed from the time the accident happened up to now? A. At different occasions. Not all of the time regular, but at different times. On both legs. Q. Did that exist prior to the time that this case was tried by the Commission in '26? A. In Oklahoma City? Q. Yes. A. Yes; and the leg was not healed at all. Q. You testified about it at that time? A. Yes,

sir. Q. Then, when you told Mr. Dixon that it broke out first in 1929, you were mistaken? A. That is, ulcers. Q. It has been continuous since the accident? A. Yes, sir. Q. And you did not mean to say it broke out first in '29, if you left that impression? A. No. Q. Now, I will ask you, Mr. Nichols, if you did not testify, before the Commission in '29, that your condition had been comparatively the same since you had been hurt? A. I could not recall. Q. Well, is that true? A. I thought it was getting better all of the time? Q. No; I asked you if you testified before the Commission when you appeared before them in Lawton, in 1929, before Inspector Noble, if you said your condition had been the same—about the same ever since you were hurt? A. Yes. Q. Is that true? A. Yes, sir."

When this record is examined it appears that, on the 11th day of February, 1926, the claimant's condition was substantially as it was at the time of the hearing in October, 1931. At the time of the first hearing, the doctors did not testify that the claimant had no permanent disability. They testified that he had a partial disability, and that they thought he would recover therefrom. The order discontinuing compensation was based on that testimony and that conclusion of the doctors. Evidently their conclusion was erroneous, for the record shows that the claimant did not recover. However, proof that he did not recover in no wise proves that his condition changed. As an example, we call attention to the testimony of Dr. Riley at the first hearing that the joint water of the knee would be restored by nature. From the record it now appears that the joint water of the knee has not been restored by nature. But that testimony does not show a change of condition, for there was no joint water in the knee at the time of the first hearing. The fact that the claimant has difficulty in using his leg now in no wise shows a change of condition, for he had that same difficulty in using his leg at the time of the first hearing. The fact that he has sores on his legs now does not show a change of condition, for he testified that he had such sores on his legs at the time of the first hearing. The injury to the ligaments existed at the time of the first hearing. The fact that those ligaments have not been restored to their normal condition does not show a change of condition.

We do not think it necessary to further review the evidence. The record at the last hearing shows a continuation rather than an improvement in the condition shown at the first hearing, but it does not show a

change of the condition as it existed at the first hearing.

The claimant was represented by able counsel at the first hearing. If the order denying compensation and dismissing the cause was not satisfactory to him, he could have petitioned this court for a review thereof. He did not do so. When that order became final, his right to have it reviewed ceased.

The decision in Slater Steel Rig Co. v. State Industrial Commission, 113 Okla. 117, 239 P. 460, is in no wise controlling on the issue presented. That issue is controlled by numerous decisions of this court, from which we cite Hanna Lumber Co. v. Penrose, 154 Okla. 210, 7 P. (2d) 164; White Oak Refining Co. v. Whitehead, 149 Okla. 297, 298 P. 611; Olentine v. Calloway, 147 Okla. 137, 295 P. 608, and Ward v. Beatrice Creamery Co., 117 Okla. 31, 245 P. 570.

Since the order of February 11, 1926, denying compensation to the claimant and dismissing his claim, is final, and since there has been no showing of a change of condition of the claimant since that date due to the accidental injury complained of, the award of the State Industrial Commission is vacated. The cause is remanded, with directions to dismiss the claim.

RILEY, HEFNER, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and KORNEGAY, J., dissent. CULLISON, J., absent.